# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LATRESE R. BENTON,            )<br>                                              )<br>                Plaintiff,        )<br>                                              )<br>vs.                                       )<br>                                              )<br>NANCY A. BERRYHILL,             )<br>Acting Commissioner of Social Security, )<br>                                              )<br>                Defendant.[1]    ) | Case No. 16-cv-01205-JPG-CJP |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Latrese R. Benton (plaintiff), represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed for SSI on August 19, 2013, alleging an onset date of February 15, 2004. (Tr. 145–50.) The claim was denied initially and upon reconsideration. Administrative Law Judge (ALJ) Paul R. Armstrong conducted an evidentiary hearing in May 2015 and issued an unfavorable decision on June 22, 2015. (Tr. 10–18.) The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final agency decision. (Tr. 1–4.) Plaintiff exhausted her administrative remedies and filed a timely complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff makes the following arguments:

1. The ALJ failed to develop the record.

2. The ALJ did not sufficiently consider the effects of plaintiff's obesity on her other

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

impairments.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2

> in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that the Commissioner made no mistakes of law. This scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this

Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether the ALJ made any errors of law. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence: "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). While judicial review is deferential, however, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## **The Decision of the ALJ**

ALJ Armstrong followed the analytical framework set forth above and determined plaintiff had not engaged in substantial gainful activities since August 19, 2013. He also found plaintiff had severe impairments of degenerative disc disease, bilateral hip arthritis, and obesity. (Tr. 12.) The ALJ opined plaintiff had the RFC to perform a full range of light work, which precluded her from performing past relevant work. ALJ Armstrong found plaintiff not disabled, however, because she was capable of performing other jobs that existed in the economy. (Tr. 14–18.)

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the arguments

raised by plaintiff.

 1. **Agency Forms**

In the agency forms, plaintiff indicated a thyroid condition, pain in her hands, an inability to stand for long periods, and problems holding things that prevented her from working. In August 2013, the date of the initial disability report, plaintiff weighed two-hundred pounds and stood at five-feet, two-inches tall. She had a twelfth-grade education and previously worked as a CNA from 1996 to 2004. Plaintiff also worked in data entry for a temporary agency from 1989 to 1994. (Tr. 175–76.)

In a function report, plaintiff alleged she experienced pain in her left arm and right hip and could not lift more than five pounds. (Tr. 195–96.)

Plaintiff prepared meals and performed some household chores such as cleaning her bathroom, dusting, and doing dishes. She could walk a half a block before needing a five-minute rest. (Tr. 197–200).

Plaintiff experienced pain when reaching overhead or above waist level. In a later-dated disability report, plaintiff stated her pain and vision worsened since her application and she developed high blood pressure and arthritis. Her illnesses affected her ability to comb her hair, sit, and stand. (Tr. 208–11.) Carrying bags of groceries, a basket of laundry, or taking out the trash brought plaintiff pain. She also stated that Dr. Granger prescribed her a cane that she used to walk. (Tr. 226, 248).

 2. **Evidentiary Hearing**

ALJ Armstrong conducted an evidentiary hearing on May 20, 2015, at which plaintiff was represented by counsel. (Tr. 24–57.) ALJ Armstrong noted the record included discharge notes from an MRI from 2015, but not the MRI itself. ALJ Armstrong further observed that a

prior x-ray of plaintiff's right hip included "a note of bilateral AVN, which means avascular necrosis, which is a rather serious problem, but it showed up, you know. I mean, it'd show up on the MRI." The ALJ asked plaintiff's attorney whether he could submit the missing MRI report within fourteen days and the attorney responded affirmatively. (Tr. 28–30.)

Plaintiff's attorney provided an opening statement and noted plaintiff moved with a cane and had a very difficult time standing, sitting, and performing other activities. The ALJ asked the attorney whether additional studies of plaintiff's hips were available. Plaintiff's attorney stated he was in the process of obtaining additional medical records. The ALJ, again, stated he would hold the record open for "at least 14 days." (Tr. 31–32.)

Plaintiff quit working as a CNA because of migraines. She drove a truck for one day but became sick from chemotherapy for colon cancer. (Tr. 33-36.) Plaintiff did not think she could work as a CNA anymore because she could not bathe or feed patients or get them out of bed. She was unable to babysit because she could not lift children. (Tr. 50.) Plaintiff could open and close her left hand "okay" but it sometimes went numb. (Tr. 39.)

Dr. Granger instructed plaintiff to lose weight. Plaintiff stated she had been trying to walk but could only travel a few steps. (Tr. 41.) The following exchange occurred regarding plaintiff's cane usage:

> Q: And you have trouble walking. How long have you used that cane?
> A: I guess about five months now.
> . . .
> Q: Who helped you, a doctor? Did a doctor prescribe that?
> A: Yes, sir, Dr. Granger.

(Tr. 38.) Plaintiff stated she tried to walk a few steps for exercise. She weighed around 238 pounds. The ALJ also discussed an x-ray, which possibly demonstrated a "bad shoulder." (Tr. 41–42.)

6

Both ALJ Armstrong and plaintiff's counsel asked plaintiff about her activities of daily living (ADLs). She stated she could not lift anything over five pounds; she did her own laundry; she tossed and turned at night and only slept for about four hours; plaintiff did nothing throughout the day; she could bathe and dress herself; she could prepare simple meals such as sandwiches; plaintiff was able to grocery shop using a motor cart; and she attempted to sweep sometimes. Plaintiff could walk about half a block. (Tr. 44–48, 55.)

A vocational expert (VE) testified at the hearing as well and opined a hypothetical individual, limited to light work, could not perform plaintiff's past relevant work. Other work existed in the economy, however, that the individual could perform. An individual limited to sedentary work could also maintain jobs that existed in the economy. (Tr. 52–53.)

The ALJ asked plaintiff whether she could perform a job, such as a truck dispatcher, which permitted her to sit down and stand up as often as she needed, as long as she could remain at a station for eight hours with normal breaks and lunches. Plaintiff alleged she could not do this job because she had to lie down due to pain. The ALJ asked how long these rest periods lasted:

> Q: Okay. How often do you have to lie down during the day?
> A: Probably in an hour, four times.
> Q: Four times. For how long?
> A: During that – an hour – an hour.

(Tr. 53–54.) The VE opined that a person who had to lie down at least an hour in the workday, in addition to normal breaks and lunch, could not maintain employment. (Tr. 55.)

ALJ Armstrong reminded plaintiff that he needed the MRI because plaintiff's hips appeared to be more of a problem than her back. He also asked plaintiff's counsel whether any additional evidence existed that was necessary to plaintiff's claim. Plaintiff's attorney indicated

he did not know of any. (Tr. 56–57.)

### 3. Medical Records

Plaintiff presented to Dr. Raymond Leung at West Park Medical Clinic on September 25, 2013 with chief complaints of left arm and right hip pain and thyroid disease. She did not use a cane or walker. Plaintiff alleged she had difficulty gripping objects with her left arm. On physical examination, plaintiff developed moderate pain. She was able to pick up a penny from a table with both hands fairly well. Plaintiff walked with a moderate to marked limp and had short strides. She walked fifty feet unassisted and was able to tandem walk. She had difficulties hopping and toe walking and was not able to heel walk. Plaintiff squatted one third of the way down. She had decreased range of motion (ROM) in the right hip and left shoulder with no muscle atrophy or spasms. Her pinch, arm, leg, and grip strength were 4+/5 throughout. Plaintiff weighed 227 pounds and was five-feet, one inch tall. (Tr. 286–92.)

Plaintiff presented to Dr. Miguel Granger on several occasions throughout the relevant period. Dr. Granger assessed plaintiff with hypertension, right hip pain, and obesity. He recommended diet and exercise for obesity and prescribed a variety of medications for plaintiff's hip, including Flexeril, Naprosyn, and ibuprofen. (Tr. 362–70.)

On January 22, 2014, x-rays of plaintiff's right hip revealed mild arthritis in the hip and sacroiliac joints and pelvic calcifications consistent with vascular calcifications. (Tr. 342.)

On May 5, 2014, plaintiff presented to Dr. Darrell Ballinger with complaints of hip pain. He prescribed plaintiff Effexor and Flexeril and referred her to physical therapy. (Tr. 349.)

On May 20, 2014, plaintiff attended a physical therapy appointment at Touchette Regional Hospital. She was diagnosed with right hip pain and her problems included right leg stiffness, difficulty walking, abnormal posture, and right leg and core atrophy. She was

instructed to attend two physical therapy sessions each week for eight weeks or until discharge. (Tr. 382–83.)

On August 11, 2014, plaintiff attended a follow-up appointment with Dr. Ballinger. He noted plaintiff's physical therapist opined plaintiff had a disc problem. Dr. Ballinger referred plaintiff to Dr. Bradley, an orthopedic doctor. (Tr. 398.)

On August 19, 2014, Dr. Granger diagnosed plaintiff with musculoskeletal pain and noted, "PT for 2 months unsuccessful, so specialist appointment." (Tr. 407.) On November 19, 2014, plaintiff presented to Dr. Granger with a chief complaint of leg and bilateral back pain. Dr. Granger indicated plaintiff had decreased internal and external rotation, reduced ROM, and pain with ROM of the right hip. He assessed plaintiff with osteoarthritis, hypertension, and obesity. (Tr. 409–14.)

On October 30, 2014, plaintiff received right hip therapeutic injections. (Tr. 423.)

On November 3, 2014, plaintiff received an MRI of the lumbar spine, which revealed degenerative disc disease with disc bulging broad base at the L3-4; moderate and intervally increased bilateral neural foraminal narrowing; and degenerative disc disease with osteoarthritis and disc bulging at the T11-T12 with likely thecal sac and bilateral neural foraminal narrowing. (Tr. 425.)

On November 19, 2014, Dr. Corey Rentfrow assessed plaintiff with bilateral avascular necrosis (AVN) and low back pain, possible herniated nucleus pulposis. He stated, "MRI reviewed from 2011 shows significant evidence of bilateral hip AVN." Upon examination, plaintiff demonstrated a lumbar paraspinal musculature tenderness; significant limited ROM throughout all planes due to pain; dysesthesias to light touch throughout the right lower extremity compared to the left; tenderness along the greater trochanter; increased pain with

9

internal and external rotation of the hip; 5/5 strength, flexion, extension, abduction, and adduction; positive Faber palpable distal pulses; and brisk capillary refill. X-rays of plaintiff's right hip from January 2014 showed arthritic changes and some femoral acetabular impingement. Dr. Rentfrow ordered MRIs of plaintiff's pelvis and lumbar spine and sent her for a right hip injection. (Tr. 452.)

On December 30, 2014, plaintiff presented to Dr. Matthew Bradley who opined plaintiff had DDD, L3-4 disc bulging with foraminal narrowing, bilateral hip avascular necrosis, and right hip trochanteric bursitis. He administered a trochanteric injection and referred plaintiff to pain management. (Tr. 449.)

On February 19, 2015, plaintiff presented to Dr. Granger who included in his diagnoses degeneration of the lumbar intervertebral disc and trochanteric bursitis. (Tr. 428–31.) On March 13, 2015, plaintiff received an x-ray of her right hip, which showed mild osteoarthritis with arthropathy of the sacroiliac joint on the right side. Vascular calcifications in the pelvis were also present. (Tr. 470.)

On March 31, 2015, Dr. Bradley assessed plaintiff with hip avascular necrosis of bone of the hip and degeneration of the lumbar intervertebral disc. He referred plaintiff to pain management. (Tr. 451.)

On April 24, 2015, Dr. Granger treated plaintiff for avascular necrosis of bone of the hip; hypertension; degeneration of the lumbar intervertebral disc; obesity; osteoarthritis; and trochanteric bursitis. (Tr. 432.) Dr. Granger referred plaintiff to pain management. (Tr. 439.) On May 7, 2015, plaintiff received right sacroiliac joint injections. (Tr. 415.)

4. **State-Agency Consultant RFC Assessment**

On November 7, 2013, Dr. B. Rock Oh opined plaintiff could frequently lift and/or carry

ten pounds; stand and/or walk about six hours in an eight-hour workday; occasionally push and/or pull with the left upper extremity; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; balance an unlimited amount; and occasionally stoop, kneel, crouch, and crawl. She should also avoid concentrated exposure to hazards. Dr. Rock Oh opined plaintiff's obesity, hip, and shoulder problems resulted in her postural limitations. (Tr. 61–63.)

On November 2, 2014, Dr. Reynaldo Gotanco conducted a records review and opined plaintiff could occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk for a total of two hours; sit for a total for about six hours in an eight-hour workday; and was limited in her ability to push and/or pull with her right, lower extremity and her left, upper extremity. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. Plaintiff should also avoid concentrated exposures to hazard. (Tr. 72–74.)

## **Analysis**

As part of her argument that the ALJ did not fully and fairly develop the record, plaintiff contends the ALJ erred in not determining whether her cane was medically necessary. "[A]n ALJ may not ignore an entire line of evidence that is contrary to her findings," but "rather she must articulate at some minimal level her analysis of the evidence to permit an informed review." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (internal citations omitted).

Plaintiff testified at the hearing that she needed a cane to ambulate and was unable to walk more than half a block. She also indicated she needed a cane in her agency reports. In his opening statement, plaintiff's counsel noted plaintiff used a cane and had difficulty walking. Without addressing any of this evidence, the ALJ rejected the postural limitations in Dr. Oh's RFC assessment because plaintiff "walked unassisted and otherwise moved normally." (Tr. 16.)

11

The ALJ did not even begin to construct the logical bridge between the evidence of plaintiff's cane usage and his determination that she walked unassisted and moved normally.

The Commissioner essentially argues the ALJ's omission was not erroneous because plaintiff bore the duty to present evidence that her cane was medically necessary. However, "[t]he error in this case . . . is not that the medical evidence *required* the ALJ to find that [plaintiff] needed a cane to stand and walk, but that the ALJ failed to consider the issue at all, leaving us without a finding to review." *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013). The VE did not articulate whether reliance on a cane would affect plaintiff's ability to perform the jobs identified at the hearing. Thus, remand is required on this point.

Plaintiff further argues the ALJ failed to develop the record by not obtaining additional medical records or ordering an x-ray of plaintiff's left arm. "[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record," *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), which requires an ALJ to make a reasonable effort to obtain a claimant's medical records to ensure there is enough information to make a disability determination. *Martin v. Astrue*, 345 F. App'x 197, 201 (7th Cir. 2009) (citing 20 C.F.R. § 416.912(d) and 416.927(c)(3)). However, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records . . . ." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).

At the hearing and in his opinion, the ALJ stated the record referenced, but did not contain, an MRI from 2015, which demonstrates the presence of avascular necrosis in plaintiff's hips. Plaintiff asserts the ALJ erred because he acknowledged the MRI existed in his opinion, but did not attempt to obtain the record. Pertinently, the Court cannot find any reference to an MRI of plaintiff's hips from 2015 in the medical record.[3] Additionally, the ALJ inconsistently

---

[3] There is reference to an x-ray from February 2015 in Dr. Granger's records. (Tr. 430.) Additionally, the record does contain an x-ray of plaintiff's right hip from March 2015. (Tr. 470.) The ALJ mistakenly referred to this x-ray

stated in his opinion that "the record is absent a physician ordering an MRI for the claimant's hip." (Tr. 15). Regardless of whether the MRI actually exists, the ALJ made a reasonable attempt to create a complete record. The ALJ instructed plaintiff's attorney on several occasions to submit the MRI, along with any additional records, and stated he would hold the record open for "at least" fourteen days. (Tr. 29-30, 33, 56-57). The ALJ's requirement to obtain medical evidence "can reasonably require only so much." *Scheck*, 357 F.3d at 702. Plaintiff did not meet her burden of supplying evidence to the ALJ and she "cannot fault the ALJ for [her] own failure to support [her] claim of disability." *Id.*

Plaintiff also contends the ALJ failed to develop the record because he did not order an x-ray of plaintiff's left arm. At the hearing, the ALJ probed plaintiff's ADLs, asked her why she stopped working, and discussed her treatment. Plaintiff testified that her "primary complaints" were her back and hips, (Tr. 49); she only mentioned a "bad shoulder" once at the hearing, (Tr. 42); and the record contains scant medical evidence related to plaintiff's left arm. The ALJ noted in his opinion, "In September 2013, the claimant reported left arm pain. However, the record is otherwise absent any left arm imaging or treatment for a left arm impairment." (Tr. 12) (internal citations omitted). Although the Commissioner has the burden of proving a claimant's ability to perform work, under 20 C.F.R. § 404.1512(a), the claimant must "bring to the ALJ's attention everything that shows that [s]he is disabled." *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). Plaintiff does not point to any facts that went unexplored during the hearing or

---

as an MRI and used it as evidence that plaintiff did not have avascular necrosis: "[A] recent MRI shows only 'mild' arthritis and 'subtle' spurring, although vascular calcifications in the pelvis were also noted." The ALJ correctly referred to the x-ray in that same paragraph and opined, "In November 2014 and April 2015, the claimant was assessed with avascular necrosis and an impingement, but a recent March 2015 right hip x-ray did not show any of those conditions . . . ." (Tr. 15.) However, it is possible that an x-ray would not detect avascular necrosis. *See Imaging in Avascular Necrosis of the Femoral Head,* MEDSCAPE, http://emedicine.medscape.com/article/386808-overview (last visited September 20, 2017). On remand, the ALJ should refrain from making independent medical findings and should seek further guidance from medical experts. "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Charter*, 98 F.3d 966, 971 (7th Cir. 1996).

provide any additional medical evidence supporting her allegations regarding left arm or shoulder pain. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

Plaintiff next argues the ALJ failed to properly evaluate plaintiff's obesity in determining her RFC. The regulations require an ALJ to assess the impact of obesity in combination with other impairments. SSR 02-1p. Here, ALJ Armstrong determined plaintiff's obesity constituted a severe impairment, he noted plaintiff's weight in his opinion, and he relied on medical evidence from physicians who considered plaintiff's obesity. This consideration was sufficient and any error is harmless because plaintiff failed to articulate how her obesity affected her function or exacerbated her symptoms. *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (upholding the ALJ's decision where, although he did not explicitly address the plaintiff's obesity, he predicated his decision upon physician opinions and medical reports noting the plaintiff's obesity); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (remand not warranted where the claimant "[did] not specify how his obesity further impaired his ability to work."). Thus, the ALJ did not err in considering plaintiff's obesity.

In conclusion, the ALJ erroneously failed to address plaintiff's cane usage in his disability determination. Failure to consider an entire line of evidence or minimally articulate the reason for rejecting a line of evidence warrants remand.

The Court stresses that this Memorandum and Order should not be construed as an indication that the Court believes plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

**Conclusion**

The Commissioner's final decision denying plaintiff's application for Supplemental Security Income is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE:  September 25, 2017**

             **s/ *J. Phil Gilbert***
             **J. PHIL GILBERT**
             **UNITED STATES DISTRICT JUDGE**